# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

James L. Washington,

    Petitioner

v.

Brian Williams, et al.,

    Respondents

Case No.: 2:16-cv-02112-JAD-NJK

**Order Denying Petition for Writ of Habeas Corpus**

[ECF No. 9]

Nevada State prisoner James L. Washington brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his public defender rendered ineffective assistance in negotiating his guilty plea for first-degree arson and possession of a firearm by an ex-felon.[1] Having considered the merits of his petition, the court concludes that Washington has not demonstrated a basis for habeas relief, so it denies the petition and a certificate of appealability and closes this case.

## Procedural Background[2]

In October 2012, a grand jury returned an indictment in Clark County, Nevada, against Washington on five counts: Count 1, carrying concealed firearm or other deadly weapon; Count 2, resisting public officer; Count 3, first-degree arson; and Counts 4 and 5, possession of firearm by ex-felon. A month later, Washington entered a guilty plea to an amended indictment charging him with one count of first-degree arson and one count of possession of firearm by ex-felon.

---

[1] ECF No. 9.

[2] This procedural background is derived from the exhibits filed under ECF Nos. 16 and 17 and this court's own docket.

Under the terms of his guilty plea agreement, Washington would receive a term of imprisonment of 6–15 years for the arson and 28 months–6 years for the gun charge, with the two terms running concurrently. In April 2013, the state district court entered a judgment of conviction imposing that sentence. Washington did not appeal.

Nearly a year later in March 2014, Washington moved to withdraw his plea, and the state district court construed the motion as a petition for writ of habeas corpus. Appointed counsel filed a supplemental petition. The court conducted an evidentiary hearing in September 2015 and denied the petition. Washington appealed. In July 2016, the Nevada Court of Appeals affirmed the lower court's denial.

Washington then initiated this proceeding. In January 2017, he filed an amended petition containing a single claim alleging that his public defender provided ineffective assistance of counsel in negotiating his guilty plea.[3] The respondents filed an answer to the amended petition in August 2017.[4] Washington did not file a reply.

**Factual Background**

Washington's claims stem from his trial-counsel's plea negotiations. Washington was initially arrested in May 2012, several months prior to the grand jury proceedings and indictment.[5] As of June 2012, he was represented by Rafael Nones, Esq. of the Clark County Public Defender's Office.[6] Nones could not attend Washington's preliminary hearing on June 6,

---

[3] ECF No. 9.
[4] ECF No. 15.
[5] ECF No. 16-2 at 11–22.
[6] ECF No. 17 at 4.

2012, due to a scheduling conflict, so he sent a substitute attorney who advised Washington to obtain a continuance.[7]

**A.    The plea negotiations**

Washington first spoke to Nones on June 13, 2012.[8] In that conversation, Nones told Washington that the district attorney had made an initial offer of 4–10 years, but it now had been replaced with an offer of 5–12 years.[9] Washington told Nones he would take the deal, but Nones told him he was trying to get the original offer reinstated.[10] Nones later called Washington to tell him he was unsuccessful in that effort but that Washington should "hold off on taking the 5-12" because Nones was trying to get Washington a mental evaluation.[11]

Several of Washington's court dates were continued on the ground that he was going to be evaluated.[12] Nones advised Washington that, given that he was going to prison on a separate case, Nones would prolong this case in hopes that the district attorney would restore the offer of 4–10 years when he "got tired of having [the case] on his desk."[13] Nones assured Washington that the district attorney would keep open the offer of 5–12 years.[14] Washington was never evaluated, and the district attorney's offer eventually rose to 10–25 years before the parties finally agreed upon 6–15 years.[15]

---

[7] ECF No. 9 at 4.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 3–4.
[13] *Id.* at 4.
[14] *Id.*
[15] *Id.*

3

**B.	Washington's state-court habeas proceedings**

At the state-court evidentiary hearing on Washington's petition for writ of habeas corpus, Nones testified that as of June 12, 2012, there was on offer of 1–10 years pending that had been conveyed to, and rejected by, Washington around June 6th.[16] Although the State had repeated the offer on June 12, Nones did not have an opportunity to confer with Washington before the State revoked the offer the next day and replaced it with a second offer of 5–12 years with a stipulation to small-habitual treatment in both this case and an unrelated second action that Washington was facing.[17] Nones recounted that he informed Washington of the second offer and that they could attempt to get the original offer back, but there were no guarantees they would be able to do so and there was a risk the offers could get worse.[18] After the preliminary hearing was continued again on June 18th, a new deputy district attorney assigned to the case made a significantly less favorable offer.[19] Eventually Nones went back to the prior deputy handling the case with whom he negotiated an agreement for 6–15 years.[20]

Nones further testified that, at every court date, he explained to Washington that if they did not enter into a negotiation at that time, the offer could change and there was a risk it would be worse.[21] He also testified that he never guaranteed Washington he would be able to get a better deal or advised Washington that he should not accept any of the plea deals.[22]

---

[16] ECF No. 17 at 4–5.
[17] *Id*. at 5–6, 10.
[18] *Id*. at 6.
[19] *Id*. at 8.
[20] *Id*. at 9.
[21] *Id*. at 11.
[22] *Id*. at 11–12.

Washington also testified. Except for a couple small details, Washington's testimony at the hearing was consistent with the allegations in his petition.[23] He testified that the only reason he rejected the offer of 5–12 years was because Nones advised him the offer would not get worse and there was a chance, with a mental evaluation, that Nones could get the district attorney to reinstate the initial offer of 4–10 years.[24]

Michael Schwartzer, the deputy district attorney assigned to Washington's case, testified that he remembered re-extending an offer of 1–10 years that had been made by a prior deputy.[25] After making that offer, however, he talked to a detective working on the case and decided to change the offer.[26] So, shortly after that, he obtained evidence making the State's case stronger and advised Nones that he was not going to re-extend the offer of 1–10 years.[27] Still, Nones worked very hard to "get a negotiation lower than habitual,"[28] but when negotiations did not progress after multiple status checks, the State took the case to the grand jury.[29] Schwartzer testified that after grand jury proceedings, the case was resolved to "six years on the bottom" on the arson count with no habitual criminal sentence, after Nones worked the agreement down from 10–25 years.[30]

The state district court found Washington's ineffective-assistance claim without merit and denied habeas relief:

---

[23] *Id*. at 12–18.
[24] *Id*. at 14–16.
[25] *Id*. at 20.
[26] *Id*.
[27] *Id*. at 21.
[28] *Id*. at 22.
[29] *Id*.
[30] *Id*. at 23–24.

5

Petitioner's claims center on counsel's alleged failings during plea negotiations. In particular, Petitioner contends that he had the right to effective assistance of counsel during plea negotiations, but here, counsel was ineffective for failing to inform him of a plea offer that the State emailed to counsel on June 12, 2012, or, in the alternative, counsel was ineffective because he advised Petition [sic] not to take a plea. Petitioner further alleges that he was prejudiced by counsel's failure to timely convey the State's offer because he would have accepted the initial plea offer which included a recommendation of 12 to 120 months incarceration, whereas the plea agreement to which he ultimately agreed included a stipulated sentence of 72 to 180 months on Count 1 and 28 to 72 months on Count 2, with both counts to run concurrently.

The Court agrees with Petitioner that he had the right to effective assistance of counsel when deciding whether to accept or reject a plea bargain. *See Rubio v. State,* 124 Nev. 1032, 1039, 194 P.3d 1224, 1229 (2008); *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1405-06 (2012). Nevertheless, the Court finds that Petitioner's argument in his Supplemental Petition is undermined by his acknowledgment in the Motion to Withdraw Guilty Plea that he was, in fact, aware of the State's initial offer. The Court also finds, based on the testimony given during the September 9, 2015 evidentiary hearing, that Petitioner's claim is without merit because the State informed Mr. Nones [defense counsel] of the original offer on or before June 6, 2012, and Mr. Nones promptly conveyed the offer to Petitioner on June 6, 2012. So, while Mr. Nones testified that he did not have an opportunity to re-convey the offer following the June 12, 2012, email from Mr. Schwartzer, Petitioner had at least a week to consider the offer before it was revoked on June 13, 2012. As to counsel's allegedly bad advice, the Court will not second-guess counsel where, as here, Mr. Nones reasonably informed Petitioner about the pros and the cons of pleading guilty. *Larson v. State,* 104 Nev. 691, 694, 766 P.2d 261, 263 (1988), *Watkins v. State,* 93 Nev. 100, 102,560 P.2d 921, 922 (1977). *See also Premo v. Moore,* 562 U.S. 115, 126, 131 S. Ct. 733, 742 (2011) ("In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take"). Thus, Petitioner fails to demonstrate that Mr. Nones' representations amounted to incompetence under prevailing professional norms. *See Harrington,* 562 U.S. at 105, 131 S. Ct. at 788; *Strickland,* 466 U.S. at 687–88, 694, 104 S. Ct. at 2065, 2068.

Moreover, while Petitioner alleges that he was prejudiced by Mr. Nones' alleged failings because he would have accepted the more-favorable offers, his self-serving argument is insufficient because it

> is conclusory and devoid of specific factual allegations. *Hargrove,* 100 Nev. at 502, 686 P.2d at 225. Furthermore, the Court finds that Petitioner's contention is belied by Mr. Nones' credible testimony that Petitioner was unwilling to negotiate and accept the State's first three offers, despite Mr. Nones' frank-and correct-advice that the plea offer likely would not improve. Relatedly, Mr. Nones' testimony is particularly credible because it is corroborated by Mr. Schwartzer's [prosecutor] testimony regarding the numerous discussions the attorneys had regarding negotiations after Petitioner decided not to accept the State's first three offers. To the extent Petitioner testified otherwise, the Court finds that he is not credible. As such, Petitioner fails to demonstrate, by a preponderance of the evidence, that he was prejudiced by counsel's alleged failings. *Molina,* 120 Nev. at 192, 87 P.3d at 538 (holding that petitioners must demonstrate how they were prejudiced by alleged errors).
>
> Thus, in summation the Court finds that Petitioner neither established that he was denied reasonably effective assistance of counsel nor that he was prejudiced by Mr. Nones' alleged deficiencies. *See Strickland,* 466 U.S. at 686-87, 104 S. Ct. at 2063-64. Accordingly, Petitioner failed to surmount *Strickland's* high bar. *Padilla,* 559 U.S. at 371, 130 S. Ct. at 1485.[31]

On appeal, the Nevada Court of Appeals noted in its decision that a defendant has a constitutional right to effective assistance of counsel "when deciding whether to accept or reject a plea bargain"[32] and cited to *Strickland*[33] as the governing standard to determine whether Nones was ineffective.[34] The appellate court then recounted the district court's factual findings, found them supported by the record, and affirmed:

> Here, the district court conducted an evidentiary hearing and made the following factual findings: Counsel reasonably informed Washington about the pros and cons of pleading guilty. The State informed counsel of its original plea offer on or before June 6, 2012, and counsel promptly conveyed the State's offer to

---

[31] ECF No. 17-6 at 8–9.

[32] ECF No. 17-13 at 2 (*quoting Rubio v. State*, 194 P.3d 1224, 1229 (Nev. 2008)).

[33] *Strickland v. Washington*, 466 U.S. 668 (1984).

[34] *Id*.

Washington on June 6, 2012. Washington was unwilling to negotiate with the State despite counsel's warning that future offers were less likely to be favorable. The State extended the same offer in a follow-up email sent on June 12, 2012. Counsel did not have a chance to re-convey the offer before it was revoked on June 13, 2012, but by then Washington had at least a week to consider it. Washington refused the State's first three offers despite counsel's frank and correct advice that the plea offers were not likely to improve. The district court also found Washington's claim that counsel failed to provide adequate advice during the plea negotiations was self-serving, conclusory, and devoid of specific factual allegations.

The district court's factual findings are supported by the record and are not clearly wrong. We conclude the district court did not err in rejecting Washington's ineffective-assistance-of-counsel claims and denying his habeas petition. *See Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004) (petitioner bears the burden of proving ineffective assistance of counsel).[35]

This federal habeas proceeding follows.

## Standard of Review for Federal Habeas Petitions

This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254(d). Under AEDPA, if a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[36] A state court acts contrary to clearly established federal law if it applies a rule contradicting the

---

[35] *Id*. at 3.

[36] 28 U.S.C. § 2254(d).

8

relevant holdings or reaches a different conclusion on materially indistinguishable facts.[37] And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[38] The "objectively unreasonable" standard is difficult to satisfy;[39] "even 'clear error' will not suffice."[40]

      Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[41] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[42] "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[43] AEDPA "thus imposes a 'highly deferential standard for evaluating state-court rulings,' . . . and 'demands that they be given the benefit of the doubt.'"[44]

---

[37] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[38] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[39] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[40] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[41] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[42] *Id.* at 103.

[43] *Id.* at 101.

[44] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

9

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[45] The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[46] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[47]

### Evaluating Washington's Habeas Claims

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[48] In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[49] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[50] The High Court extended *Strickland*'s two-part to test to plea proceedings in *Hill v. Lockhart*, holding that a petitioner claiming ineffective assistance surrounding a guilty plea must show (1) that counsel's advice fell below an objective standard of reasonableness and (2) a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial.[51] Washington claims that Nones's plea-related

---

[45] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[46] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[47] 28 U.S.C. § 2254(e)(1).

[48] *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[49] *Strickland*, 466 U.S. at 690.

[50] *Id.* at 694.

[51] *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

activities were ineffective in two ways: (1) by not conveying the initial offer to Washington before the district attorney revoked it; and (2) by advising him to not accept the offer of a 5–12 year sentence.

A. **Failure to convey the initial offer**

Washington has not shown that he is entitled to habeas relief based on Nones's failure to convey the initial offer to him before the prosecutor revoked it. The Supreme Court recognized in *Missouri v. Frye* that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."[52] "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," the petitioner must "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel" and that "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."[53]

The Nevada courts found that counsel *did* notify of Washington of the offer before it was revoked, but that Washington rejected it. They also excused Nones's failure to communicate the renewed offer of June 12 because he did not have an opportunity to confer with Washington before it was revoked the following day.

Reviewed under § 2254(d)(1), the state court's adjudication of this claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The state court applied

---

[52] *Missouri v. Frye*, 566 U.S. 134, 145 (2012).

[53] *Frye*, 566 U.S. at 147.

11

the correct federal law standards, and because it found that counsel had communicated the initial offer to Washington, its conclusion that counsel was not ineffective was a reasonable application of those standards. The court's conclusion that counsel was not ineffective in failing to contact Washington regarding the June 12 offer was also reasonable given that the offer was revoked just a day later without prior notice.[54]

Nor did, the state court's adjudication of this claim "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Its finding that Washington had been informed of the offer prior to June 13th was fatal to his claim. In essence, the state court found, after reviewing the pleadings and hearing testimony from Nones, Washington, and Schwartzer, that Nones's version of the relevant events was more credible than Washington's version. Even if it were to doubt the state court's findings of fact, this court does not see anything in the state court record that shows the findings to be objectively unreasonable.[55]

Even if Nones did fail to timely convey the initial offer to Washington, this court is not convinced that Washington can establish prejudice under the *Frye* standard. The record does not contain facts indicative of a reasonable probability the plea would have been entered before the prosecution modified the offer and that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.[56] In *Frye*, the Court found that the defendant had shown that he would have accepted to the lapsed plea

---

[54] *See Frye*, 566 U.S. at 145 (noting that exceptions to rule requiring counsel to communicate favorable offers "need not be explored here, for the offer was a formal one with a fixed expiration date").

[55] *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[56] *See Frye*, 566 U.S. at 147.

12

offer but remanded the case for the state court to determine the "state law questions" of whether the prosecutor was required to adhere to the initial offer and whether the trial court was required to accept the plea agreement.[57] In doing so, the Court explained the considerations that undermine a prejudice finding:

> If, as the Missouri court stated here, the prosecutor could have canceled the plea agreement, and if Frye fails to show a reasonable probability the prosecutor would have adhered to the agreement, there is no *Strickland* prejudice. Likewise, if the trial court could have refused to accept the plea agreement, and if Frye fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice.[58]

There is no evidence in this record that the initial offer was made before June 6, 2012, and it is not disputed that the offer was taken off the table on June 13. Schwartzer testified that he retracted the offer because the detective he contacted "considered this defendant to be quite a bit of a problem and his criminal history being quite a bit of a problem"[59] and "thought [Washington] was up to additional criminal behavior while in custody as well."[60] In light of the brief life span of the offer and Schwartzer's testimony, it is unlikely that an agreement on the offer would have been finalized and a plea would have been entered before Schwartzer canceled the offer.[61]

---

[57] *Id*. at 151.
[58] *Id*.
[59] ECF No. 17 at 20.
[60] *Id*.
[61] *Cf. id.* ("In this case, given Frye's new offense for driving without a license on December 30, 2007, there is reason to doubt that the prosecution would have adhered to the agreement or that the trial court would have accepted it at the January 4, 2008, hearing, unless they were required by state law to do so.").

13

**B.     Advice not to accept the 5–12 year offer**

As a second theory, Washington claims that counsel was ineffective by advising him to not accept the offer of 5–12 years. In *Lafler v. Cooper*,[62] the U.S. Supreme Court held that the defendant had established *Strickland* prejudice where counsel's deficient advice to not accept a plea offer resulted in a conviction after a fair trial and a sentence longer than the defendant would have received under the plea offer.[63] The Court suggested that whether counsel's performance fell below the *Strickland* standard could depend on whether his advice was based on a misunderstanding of the law or an inaccurate prediction about the outcome of the case.[64] The Court did not resolve the question, however, because the parties had agreed there was no question of deficient performance, only prejudice.[65]

In deciding this aspect of Washington's claim, the state court concluded that he failed to establish either deficient performance by Nones or prejudice in relation to advice counsel provided during plea negotiations. It gave more credence to Nones's testimony, which to some extent was corroborated by Schartzer's testimony, than it gave to Washington's testimony and allegations. The state court concluded that Washington failed to show that Nones's advice amounted to incompetence under "prevailing professional norms" and that, but for that advice, there is a reasonable probability Washington would have accepted a more favorable offer.

This court must defer to the state court's decision under § 2254(d). The record supports a finding that Nones aggressively negotiated on Washington's behalf. The net result was that Washington was convicted on only two of five counts and avoided imposition of a habitual-

---

[62] *Lafler v. Cooper*, 566 U.S. 156 (2012).
[63] *Lafler*, 566 U.S. at 164.
[64] *Id*. at 174.
[65] *Id*.

14

criminal adjudication. Absent from the record is convincing evidence that Nones gave Washington glaringly erroneous advice of the type present in *Lafler*.[66] Plus, Nones cannot be faulted for not anticipating that the State's case would grow stronger and the prosecutor would take a harder line.[67] The state court's denial of Washington's bad-advice claim thus was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[68]

## No Certificate of Appealability

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to determine whether a certificate of appealability (COA) should issue. To obtain a certificate of appealability, a petitioner must make "a substantial showing of a denial of a constitutional right"[69] by showing that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."[70] To meet this threshold inquiry, the petitioner must demonstrate that the issues are debatable among jurists of reason, a court could resolve the issues differently, or that the questions are adequate to deserve encouragement to proceed.[71] For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim for the denial of a constitutional right

---

[66] *See Lafler*, 566 U.S. at 161 ("[A]llegedly [Lafler's] attorney convinced him that the prosecution would be unable to establish his intent to murder [his victim] because she had been shot below the waist.").

[67] *See Premo v. Moore*, 562 U.S. 115, 124–25 (2011) (noting that the vagaries of plea bargaining "make strict adherence" to the latitude the *Strickland* standard requires "all the more essential when reviewing the choices an attorney made at the plea bargain stage").

[68] *Harrington*, 562 U.S. at 103.

[69] 28 USC § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

[70] *Slack*, 529 U.S. at 484.

[71] *Id.*

15

and (2) whether the court's procedural ruling was correct.[72]  Based on this record and the nature of my merits disposition, the court finds that petitioner cannot satisfy these standards and declines to issue a certificate of appealability.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Washington's amended petition for habeas relief **[ECF No. 9] is DENIED.**  The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

IT IS FURTHER ORDERED that **a certificate of appealability is denied**.

Dated: June 18, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[72] *Id.*